EMPIRE CITY FIRE INS. CO. v. AMERICAN CENT. INS. CO. et al.

(Circuit Court of Appeals, Third Circuit. January 14, 1915.)

No. 1856.

1. COURTS (§ 405*)—JURISDICTION—DETERMINATION OF QUESTION OF JURISDICTION.

The Circuit Court of Appeals is bound to consider the question of jurisdiction on its own motion.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

2. COURTS (§ 327*)—UNITED STATES COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

The G. Company owned property on which policies had been issued by 43 insurance companies and which was destroyed by fire. The companies adjusted the loss and apportioned the amount thereof among the different companies; the share of only one, the E. Company, exceeding $2,000. The E. Company and certain of the other companies paid their shares by drafts, which insured indorsed to F. & Co., who collected the amounts thereof. The E. Company brought suit, making all of the other companies who had paid their shares defendants, alleging fraud on the part of the G. Company in connection with the adjustment, and that F. & Co. collected the drafts as agent for the G. Company, and with knowledge of the fraud, and praying that the adjustment be set aside, that the amount in the hands of the F. Company be ascertained, and that company enjoined from disposing of it and required to account, that the defendant insurance companies be required to set up their claims on the fund, and that the trustee in bankruptcy of the G. Company, which subsequent to the adjustment was adjudged a bankrupt, be required to set up his claim and be restrained from suing. Held that, the suit having been brought in 1910, the amount in controversy was sufficient to give jurisdiction to the United States courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 889; Dec. Dig. § 327.*

Jurisdiction as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459; O. J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

3. ACTION (§ 22*)—FORM—LAW OR EQUITY.

The bill presented a case within the jurisdiction of equity, especially as bankruptcy had supervened and the interest of the trustee in some respects was adverse to that of the insurance companies, there was a question as to the amount in the hands of F. & Co. and how that amount should be apportioned between the insurance companies, and whether the adjustment and apportionment originally made ought not to be set aside, and the bill on its face promised to prevent unnecessary suits and to settle several controversies in one litigation.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 124–139, 143, 145; Dec. Dig. § 22.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit by the Empire City Fire Insurance Company against the American Central Insurance Company and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

Hartwell Cabell, of New York City, for appellant.

J. McF. Carpenter, of Pittsburgh, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

J. B. McPHERSON, Circuit Judge. This bill in equity sought to impose a trust upon a sum of money that came into the hands of A. Friedberg & Co., a firm that is one of the defendants. The money was paid to one or the other member of the firm by the plaintiff and by certain other insurance companies, also among the defendants, and the suit could not succeed unless the firm had been a partner in the business of the G. & K. Trunk Company, a bankrupt Pennsylvania corporation, or unless the firm had received the money with knowledge of a fraud against the plaintiff and its coinsurers that the corporation was charged with perpetrating. The District Court decided the dispute on the merits and dismissed the bill, on the ground that the firm had not been a partner, and had received the money without knowledge of the fraud. Judge Orr's opinion (which has not been reported) is as follows:

"The plaintiff has filed this bill for the purpose of impressing a trust upon moneys in the hands of A. Friedberg & Bro., which plaintiff says belongs to it and to other insurance companies by reason of the fact that the insured fraudulently procured an adjustment of loss after a fire, procured drafts in payment of the loss, and assigned the same, without value, to A. Friedberg & Bro., who had full knowledge of the fraud of the insured.

"By reason of the fact that the plaintiff's claim exceeded the jurisdictional limitation, and by reason of the allegation of facts which, if they had been sustained, would have impressed a trust upon funds and moneys within this district, this court had jurisdiction of the controversy.

"The plaintiff and many other insurance companies had insured the property of the G. & K. Trunk Company, a corporation. The property having been destroyed by fire, the adjusters of the different companies met and agreed upon the amount of loss. The evidence appears to be sufficient to establish the fact that there was fraud upon the part of the officers of the G. & K. Trunk Company. It is not necessary, however, to review the evidence as to this matter, or to elaborate the finding, because the evidence does not disclose the fact, which is most material to the plaintiff's case, that A. Friedberg & Bro., or either of that firm, had knowledge of the fraud perpetrated by the officers of the G. & K. Trunk Company. The fraud consisted of an overvaluation of assets under oath. Plaintiff offered the officers of the G. & K. Trunk Company, who testified that Max Friedberg, and the firm of A. Friedberg & Bro., were to have an interest in the business of the Trunk Company; that Max Friedberg examined the books of the Trunk Company at different times and received statements of the Trunk Company. It is not necessary to urge the point that the witnesses, who were officers of the Trunk Company, are discredited as witnesses in the present case by their connection with the fraud upon the plaintiff and the other companies. It is merely necessary to read the evidence in this case to justify the conclusion that they are not to be believed with respect to their statements as to the interest of Max Friedberg, or the firm of A. Friedberg & Bro. in the Trunk Company. The evidence discloses that Max Friedberg loaned from time to time large

sums of money to the Trunk Company, and that his sole interest with respect to the Trunk Company was that of a creditor. It is immaterial that he had made usurious contracts with the Trunk Company, or with those interested therein. He was nevertheless a creditor to a large amount. And not only this, but he was a creditor of the father of one of the principal officers and stockholders of the Trunk Company, in that he had furnished to the father $12,000 upon a mortgage executed by the father and delivered to him, of which sum the father had turned over $10,000 to the officers of the Trunk Company. After the fire occurred Max Friedberg was largely interested in the proceeds of the insurance, to the extent of having it applied to the indebtedness due him and due the father, who was indebted to Friedberg. The drafts as they were received from the insurance companies were indorsed to Friedberg or his firm, and many of them were collected by him. In this way he was reimbursed. It also appears that he cashed other drafts of insurance companies in payment of their shares of the loss as found by and adjusters, taking the drafts and giving the money to the officers of the Trunk Company. So far as appears neither of the Friedbergs, or their firm, have any amounts in their hands to which plaintiff is entitled. The case, therefore, of the plaintiff must fall because of the failure to prove Friedberg's participation in the fraud.

"The bill must be dismissed, at the cost of the plaintiff."

[1] We are not satisfied that the court was mistaken in dismissing the bill for the reasons thus stated, and we shall confine ourselves to the question of jurisdiction—which, of course, we are bound to consider, even on our own motion.

[2] The situation is not altogether easy to present with clearness, but the bill appears to set forth the following case for determination. On July 24, 1909, the Trunk Company was the owner of merchandise, machinery, etc., on which policies of fire insurance amounting to $75,000 had been issued in varying amounts by 43 insurance companies. Each of these companies was liable only for its proportion of such loss as might occur. On the day named a fire destroyed much of the property, and all the companies were called in to adjust the loss. Of course the amount and value of the goods destroyed were of vital importance, and therefore the Trunk Company submitted to the adjusters various accounts, inventories, etc., from which the parties determined on August 5th that the sound value of the property insured had been about $48,000, and that the loss sustained was about $39,000. The amount thus agreed to was then apportioned among the 43 underwriters; of the sums charged against them only one, namely, the share of the Empire State Fire Insurance Company, the plaintiff herein, exceeded the sum of $2,000—the other shares ranging between $1,300 and $520. The bill charges that the amount and valuation of the property insured, and therefore the amount of the loss, had been fraudulently increased by the Trunk Company, and, of course, that the adjustment was necessarily tainted with the fraudulent increase. The Empire State Insurance Company and 13 other companies—all the latter being among the parties defendant—paid their shares by drafts aggregating $14,000; but these payments were made before any of them had knowledge of the Trunk Company's fraud. The drafts came into the hands of one or both of the Friedbergs, and the bill charges that the money was collected by the firm merely as agent for the company and with knowledge of the fraud. In December the Trunk Company

was adjudged bankrupt, and John D. Evans was appointed receiver, and afterwards trustee. Both the Trunk Company and Evans are also defendants.

In outline these are the facts set forth by the bill, and upon the alignment of parties therein the requisite diversity of citizenship appears, and (since the bill was filed in 1910) the sum in controversy is sufficiently large. It remains to consider the relief sought.

[3] In brief the plaintiff prayed that the adjustment of August 5th should be set aside; that the amount of money in the hands of the Friedbergs should be ascertained, and for an injunction forbidding them to dispose of it; that the 13 insurance companies defendant should be called upon to set up their claims upon the fund; that the trustee in bankruptcy should also be required to set up his claim, and meanwhile should be restrained from suit; and, finally, that the Friedbergs should account for and pay into court for distribution the money found to be in their possession.

We are not concerned with the situation that might be presented after a hearing and the ascertainment of the facts; it is the court's initial right to judge the controversy that is now being considered, and this must depend upon the case made by the pleadings, and not the case made by the proof. There is a good deal of plausibility about the contention that the plaintiff had an adequate remedy at law by an action of assumpsit to recover the money alleged to have been improperly received by the Friedbergs, but we incline to think that under the peculiar circumstances a bill in equity was (at least upon the surface) the more complete and suitable remedy. It must be remembered that the Trunk Company's bankruptcy had supervened, for this introduced a new factor into the situation. The trustee's interest was in some respects the same as the plaintiff's, and in some respects adverse. He was interested to support the position that the money belonged to the Trunk Company, and not to the Friedbergs, but he was also interested to deny the Company's fraud. And this is true also with regard to his attitude toward the 13 companies that were defendant. For present purposes it makes no difference whether they are formally defendants, or should be aligned with the plaintiff. Moreover, there was a question whether the full amount of $14,000 was still in the hands of the Friedbergs, and, if not, how the amount found to be there should be apportioned. And, still further, there was a question whether the adjustment and apportionment that had been made in August ought not to be set aside as an essential preliminary to further relief. In the decision of this latter question the remaining 29 insurance companies, who are not parties at all, would perhaps be equally interested, although it is a fair inference from the bill that none of them has paid its share, and that all are denying liability in toto. Whether they were necessary parties presented a question that might be important, because, if they were necessary parties and were to be aligned with the plaintiff, the requisite diversity of citizenship would no longer exist— for some of them are Pennsylvania corporations, while the Friedbergs, the trustee in bankruptcy, and the Trunk Company, are all citizens of Pennsylvania. In so complex a situation, this much at least seems clear—that the bill in question promised to prevent unnecessary suits,

and to settle several controversies in one litigation; and on the whole case we think that the District Court was right in entertaining jurisdiction. The controversy might perhaps have been decided against the plaintiff on some other ground, but our only concern at present is whether the court had a right to hear the dispute at all.

The decree is affirmed.